RECEIVED **UNITED STATES DISTRICT COURT**

SEP 2 2 2011 **FOR THE WESTERN DISTRICT OF LOUISIANA**

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY: _____

**SHREVEPORT DIVISION**

GREGORY WILLIS, ET AL.

versus

CLECO CORPORATION

CIVIL ACTION NO. 09-2103

JUDGE TOM STAGG

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by the defendant, Cleco Corporation ("Cleco"), seeking dismissal of claims alleged by the plaintiff, Thomas Jones. See Record Document 38. Based on the following, Cleco's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Thomas Jones ("Jones"), along with eleven other current and former African-American employees of Cleco, brought this action against Cleco, alleging race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.; Section 1981 of the United States Code, 42 U.S.C. § 1981; the Louisiana Employment Discrimination Law, La. R.S. 21:301,

et. seq.; and the Louisiana Commission on Human Rights, La. R.S. 51:2231.[1] Jones, who remains employed by Cleco, raises claims of failure to promote, racial discrimination in pay, and discrimination and retaliation based on race. Cleco now moves to dismiss these claims.[2]

In 1985, Jones began his employment at the Dolet Hills Power Station located near Mansfield, Louisiana. See Record Documents 38, Statement of Material Facts. Initially, Jones was an Associate Material Handler. From October of 2002 through December of 2005, Jones worked as a Field Maintenance Supervisor over the balance of plant maintenance at Dolet Hills.  He was responsible for mechanical maintenance of the lignite handling systems and flue gas desulfurization area equipment, rolling equipment maintenance, landfill operations, and impoundments.  Beginning in January of 2003, Jones's position was under the supervision of Pat Dupuy ("Dupuy"), a white male.  Other Field Maintenance Supervisors under Dupuy were James Urda ("Urda"), who responsible for the mechanical maintenance of all equipment in the power block area of the facility, and Marty Robinson ("Robinson"), who was over electrical and

---

[1]Jones concedes that he "failed to exhaust his administrative remedies under Title VII and [his] Title VII claims are not before this court." See Record Document 57 at 10.  Therefore, Cleco is entitled to summary judgment as to his Title VII claims.

[2]Cleco has filed separate motions for summary judgment against the other plaintiffs. See Record Documents 35, 36, 39, 40, and 41.

instrumentation and was responsible for electrical and instrumentation equipment maintenance plant-wide. Both Urda and Robinson are white. See id.

In December of 2005, the Dolet Hills facility underwent a restructuring. Jones remained supervisor of the balance of plan maintenance, but his flue gas desulfurization responsibilities were transferred to a new Field Maintenance Supervisor, Ricky McPhearson ("McPhearson"). Also as part of this restructuring, Robinson was promoted to a more senior position as Plant Maintenance Supervisor, with Steve Estes ("Estes") assuming his position as Field Maintenance Supervisor for electrical and instrumentation. Urda moved to a newly created Field Maintenance Supervisor position for planning and scheduling. Ronnie Pepmiller ("Pepmiller") replaced Urda as Field Maintenance Supervisor over the power block area. In October of 2006, Urda resigned. Bruce Collier ("Collier") replaced him as Field Maintenance Supervisor of Planning. In February of 2008, Pepmiller resigned, and Gary Burns ("Burns") assumed the position of Field Maintenance Supervisor over the power block area. McPhearson, Estes, Pepmiller, Collier, and Burns are all white. In 2008, the Dolet Hills facility underwent another restructuring, during which Jones was transferred to the his current position of Fuel Handling Supervisor.[3] See id.

---

[3]Cleco insists this transfer was lateral. See Record Document 38, Statement of Material Facts at 3.

3

Cleco based the compensation of salaried employees on their performance in accordance with the salary grade for their position.   For instance, Field Maintenance Supervisors have been at a grade six since 2005.  Each salary grade has a pay bracket outlining the minimum, midpoint, and maximum salary for a position at that grade.  The midpoint salary has a ratio of 1.0 and pays 100% of the grade salary.   The minimum is set at .77 (77%) and the maximum 1.23 (123%). The midpoint salary is intended to represent the annual salary an employee would receive for performing all tasks asked of him.  The salary grade brackets can be adjusted annually to account for changes in market factors. See id.

During the period from January 2005 through 2008, the relative annual salaries for the Field Maintenance Supervisors were as follows.[4]  In January of 2005, Jones earned less than Urda and Robinson. See id.  In December of 2005, he earned less than Urda and Estes but more than Pepmiller and McPhearson.   In January of 2006, Jones earned less than Urda, Pepmiller, McPhearson, and Estes. When Collier joined in October of 2006, he made less than Jones and all other Field Maintenance Supervisors.  Again in January of 2007, Jones earned less than the other Field Maintenance Supervisors (Pepmiller, McPhearson, and Estes) but

---

[4]Cleco's Statement of Material Facts includes a table showing the annual salaries of Jones, Urda, Pepmiller, McPhearson, Estes, Collier, Burns, and Robinson. See id.  Jones admits the accuracy of the table.  See Record Document 57, Statement of Undisputed Facts.  A copy of this table is attached as Appendix 1.

4

more than Collier.  The same is true in 2008 except Jones was also earning more than the newly-added Burns.  See id.  Jones argues that the discrepancy in salary is a result of racial discrimination.  See Record Document 57, Response to Defendant's Statement of Facts at 3.

Jones next claims that he "has been denied promotions based on his race while similarly situated white employees with less education and experience have been promoted."  Record Document 5 at 37.  The complaint continues by giving factual summaries of denied promotions in 1991, 2000, 2001, 2002, 2003, 2005, and 2007.  See id. at 38-39.

Jones also alleges that Cleco discriminated and retaliated against him by placing a disciplinary letter in his file after he failed to report a near miss incident to his supervisor.  See id. at 39.  Jones claims that white supervisors have done the same thing and not received any disciplinary action.  See id.[5]

## II. ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the

---

[5]Jones's First Supplemental complaint claims he suffered hostile work environment discrimination.  See Record Document 5 at 40.  The court did not address this claim, as Cleco did not raise it in its motion for summary judgment.

movant is entitled to judgment as a matter of law."[6]  Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010).   "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004).   If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial."  Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004).   Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).   The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

---

[6]The court notes that the recently amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

**B.    Notice Requirement Under Louisiana Law.**

Cleco contends that Jones's claims under Louisiana Revised Statute 23:301,

et seq., must be dismissed because Jones did not comply with the statute's notice

requirements.   See Record Document 38 at 13-14.   Louisiana Revised Statute

23:303(C) requires a plaintiff who thinks he has been discriminated against and

intends to file a lawsuit to "give the person who has allegedly discriminated written

notice of this fact at least thirty days before initiating court action."

The proffered evidence shows Jones did comply with the thirty day notice

requirement.  On November 20, 2009, Jones's attorney, Bridget Brown, delivered a

letter and a complaint to the Chief Executive Officer and General Counsel of

Cleco.  See Record Document 57, Affidavit of Bridget Brown.  The letter, signed

by Jones's counsel, stated:  "In accordance with Louisiana Revised Statute La. R.S.

23:301 et seq., and La. R.S. 51:2256, this letter and attached Complaint is

forwarded to you as notice." Record Document 57-7.  On December 12, 2009,

Jones, along with the other plaintiffs, filed their first complaint.  See Record

Document 1.  While that complaint was too early for notice to be effective under

Louisiana Revised Statute 23:303(C), it did not include claims under Louisiana

law.  Instead, it was limited to the plaintiffs' claims under federal law, namely Title

7

VII and 42 U.S.C. § 1981.[7]   On January 26, 2010, the plaintiffs filed a First Supplemental Complaint for damages, which added claims based on Louisiana law.  Compare Record Document 5 at 51-52 with Record Document 1 at 51-52. Jones's state law claims were made more than thirty days after Cleco received the November 30, 2009, letter notifying it of the plaintiffs' intent to sue for discrimination under Louisiana Revised Statute 23:301.   Thus, Jones met the statutory notification requirements mandated by Louisiana law, and Cleco's motion for summary judgment on this ground is denied.

**C.   Failure To Promote Claim.**

Jones claims that Cleco failed to promote him in 1991, 2000, 2001, 2002, 2003, 2005, and 2007 because of his race, in violation of federal and state law. See Record Document 5 at 37-39.   Cleco contends that Jones's section 1981 claims arising from 2005 and 2007 are time-barred under Louisiana's one-year prescriptive period.[8]

---

[7] While the original complaint does mention that the claims are brought pursuant to Louisiana law, in a later section detailing each "legal cause of action," the source of law is limited to "42 U.S.C. Section 2000, and 42 U.S.C. Section 1981." The court does not interpret the passing reference to Louisiana law as creating a Louisiana cause of action.

[8] Cleco's motion for summary judgment and the memorandum in support of it do not address Jones's failure to promote claims. See Record Document 38.  But in Jones's opposition memorandum, he (inexplicably) argues that the 2005 and 2007 failure to promote claims, as brought under section 1981, are timely. See Record Document 57 at 10-11.  Jones insists that after the Civil Rights Act of

8

Section 1981 provides that "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981.  Section 1981 does not contain a statute of limitations.  See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371, 124 S. Ct. 1836, 1839 (2004).  When a federal statute does not contain a statute of limitations, courts should apply "the most appropriate or analogous state statute of limitations."  Id.  Under Louisiana law, "[a] section 1981 claim is best characterized as a tort . . . and is, therefore, governed by the one-year prescriptive period for delictual actions dictated by [Louisiana Civil Code article] 3492." Taylor v. Bunge Corp., 775 F.2d 617, 618 (5th Cir. 1985).  However, for actions arising under federal statutes enacted after December 1, 1990, courts must apply a catchall four-year statute of limitations.  See 28 U.S.C. § 1658 ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.").

Section 1981 was originally enacted as part of the Civil Rights Act of 1866 and covered "only conduct at the initial formation of the contract and conduct

---

1991, his failure to promote claims are subject to a four year statute of limitations. In its reply memorandum, Cleco argues for the first time that these 2005 and 2007 section 1981 failure to promote claims are untimely because they are subject to Louisiana's one year statute of limitations. See Record Document 69 at 2-3.

which impairs the right to enforce contract obligations through legal process." Patterson v. McLean Credit Union, 491 U.S. 164, 179, 109 S. Ct. 2363, 2374 (1989). Section 1981 "did not protect against harassing conduct that occurred after the formation of the contract." Jones, 541 U.S. at 372, 124 S. Ct. at 1840 (citing Patterson, 491 U.S. 164, 109 S. Ct. 2363). Section 1981 was later amended by the Civil Rights Act of 1991 to create a cause of action for discriminatory and retaliatory conduct occurring after the formation of the contract. See id. Thus, the applicable statute of limitations depends upon whether the claim was actionable under the older version of section 1981 or is only made possible by the 1991 amendments. See id. at 382, 124 S. Ct. at 1845. Where the plaintiff's claim was available under the original section 1981, the court must apply the analogous state statute of limitations, which in Louisiana is one-year. See id. at 371, 124 S. Ct. at 1839; Taylor, 775 F.2d at 618. However, where the claim is only available under section 1981 as amended, the cause of action is said to "arise under" the Civil Rights Act of 1991 and the federal four-year statute of limitations provided by section 1658 applies. See Jones, 541 U.S. at 382, 124 S. Ct. at 1845.

Failure to promote claims were actionable under section 1981, prior to the 1991 amendments, if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." Patterson, 491

10

U.S. at 185, 109 S. Ct. at 2377. As the Supreme Court explained in Patterson, "only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under [section] 1981." Id. "In deciding whether a change of position rises to the level of a new and distinct relation, the court must compare the employee's current duties, salary, and benefits with those incident to the new position." Police Assoc. of New Orleans v. City of New Orleans, 100 F.3d 1159, 1170-71 (5th Cir. 1996). If the new position involves "substantial changes," the failure to promote claim was available under section 1981 prior to the 1991 amendments and Louisiana's one-year prescriptive period applies. Police Assoc. of New Orleans, 100 F.3d at 1170-71; see also Fonteneaux v. Shell Oil Co., 289 F. App'x 695, 699 (5th Cir. 2008). Otherwise, the claim is only available under section 1981 as amended and the four-year statute of limitations applies. See id.

Cleco makes no substantive argument why Jones's failure to promote claims should be dismissed. Instead, it relies solely on its assertion that a one year statute of limitations applies. As noted above, the statute of limitations for a failure to promote claim is fact intensive, requiring a determination of "whether a change of position rises to the level of a new and distinct relation." Police Assoc. of New Orleans, 100 F.3d at 1170-71. There is no evidence in the summary judgment

11

record to determine whether the four year or the one year statute of limitations applies. Accordingly, the court finds that a factual dispute exists as to Jones's failure to promote claims for activity occurring in 2005 and 2007. Accordingly, Cleco's motion for summary judgment is denied.[9]

## D.   Race Discrimination And Retaliation.

Jones alleges racial discrimination and retaliation by Cleco, in violation of Section 1981 of the United States Code, 42 U.S.C. § 1981; the Louisiana Employment Discrimination Law, La. R.S. 21:301, et. seq.; and the Louisiana Commission on Human Rights, La. R.S. 51:2231. "Claims of racial discrimination in employment, pursuant to 42 U.S.C. § 1981 and the Louisiana Employment Discrimination Law [La. R.S. 23:301], are governed by the same analysis as that employed for such claims under Title VII." DeCorte v. Jordan, 497 F.3d 433, 437 (5th Cir. 2007). The Title VII framework also applies to claims made under La. R.S. 51:2256. See Ware v. Cleco Power, LLC, 90 F. App'x 705, 707 n.3 (5th Cir. 2004).

Under Title VII, "[a]n employee can prove discrimination through direct or circumstantial evidence." Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 992

---

[9]It appears that Cleco did not seek summary judgment as to Jones's federal and state law failure to promote claims involving activity in 1991, 2000, 2001, 2002, and 2003. Accordingly, the court will not address these claims.

12

(5th Cir. 2005).   It is clear that Jones is relying on circumstantial evidence to support his present claim.[10]   "Cases of discrimination based on circumstantial evidence are subject to the <u>McDonnell Douglas</u> burden-shifting analysis."   <u>See</u> <u>Davis v. Dallas Area Rapid Transit</u>, 383 F.3d 309, 316-17 (5th Cir. 2004) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)).

> To survive summary judgment under <u>McDonnell Douglas</u>, the plaintiff must first present evidence of a prima facie case of discrimination. If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action.[11] If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.[12]

---

[10]Jones does not allege that he possesses direct evidence of discrimination in support of his failure to promote claims. <u>See</u> <u>Jones</u>, 427 F.3d at 993 (providing descriptions and examples of direct evidence of discrimination that do not match the evidence presently before this court in regard to Jones's failure to promote claims).

[11]"This burden on the employer is only one of production, not persuasion, involving no credibility assessments." <u>Russell v. McKinney Hosp. Venture</u>, 235 F.3d 219, 222 (5th Cir. 2000).

[12]"[A] plaintiff must present sufficient evidence to find that the employer's asserted justification is false." <u>Crawford v. Formosa Plastics Corp.</u>, 234 F.3d 899, 903 (5th Cir. 2000) (citations and quotations omitted).

Davis, 383 F.3d at 317 (citations omitted).   This framework governs the substantive analysis of Jones's remaining claims under section 1981 and Louisiana law.

### 1.   Pay Discrimination Claim.

As mentioned, a plaintiff must first establish a prima facie case of discrimination.   "To establish a prima facie case of discrimination regarding compensation, a plaintiff must prove that (1) he is a member of a protected class and (2) he is paid less than a nonmember for work requiring substantially the same responsibility." Runnels v. Tex. Children's Hosp. Select Plan, 167 F. App'x 377, 384 (5th Cir. 2006).   There is no question that Jones, as an African-American man, meets the first requirement of membership in a protected class.   Cleco argues that Jones cannot meet the second requirement because he was paid more than some white employees and because the alleged pay comparators performed different jobs.   See Record Document 38 at 14.

"An individual plaintiff claiming disparate treatment in pay under Title VII must show that his circumstances are 'nearly identical' to those of a better-paid employee who is not a member of the protected class." Taylor v. United Parcel Serv., Inc., 554 F.3d 510, 523 (5th Cir. 2008) (citing Little v. Republic Refining Co., 924 F.2d 93, 97 (5th Cir. 1991)).   "In making this showing, an individual

14

plaintiff pursuing an <u>individual</u> claim may not rely on the type of pattern-or-practice evidence that is acceptable in class actions suits alleging similar conduct, such as general statistical evidence." <u>Id.</u> (citing <u>Thompson v. Leland Police Dep't</u>, 633 F.2d 1111. 1114 (5th Cir. 1980) (emphasis in original). "Instead, he must present <u>prima facie</u> evidence that his pay was lower than <u>specific</u> employees who are not members of the protected class." <u>Id.</u> (emphasis in original). Jones "must show that those workers to whom he compares himself were 'performing substantially the same job.'" <u>Johnson v. TCB Constr. Co.</u>, 334 F. App'x 666, 670 (5th Cir. 2009) (quoting <u>Uviedo v. Steves Sash & Door Co.</u>, 738 F.2d 1425, 1431 (5th Cir. 1984)).

In its motion, Cleco argues that Jones and the alleged comparators (Urda, Pepmiller, McPhearson, Estes, Collier, and Burns) did not perform substantially the same job despite the fact they all held the same title of Field Maintenance Supervisor. In support, Cleco alleges that each supervisor oversaw a different area of the Dolet facility and that each area required different responsibilities of its supervisor. <u>See</u> Record Document 38, Ex. D-101 at 4. Each area also involved equipment of different complexities, had different numbers of employees and outside contractors, and accounted for different percentages of the plant's budget. <u>See id.</u> Cleco specifically alleges that "the power block area accounts for the

15

majority of the Dolet Hills facility's budget, requires substantially greater resources to maintain than the other areas, accounts for the majority of all after-hours calls necessary for equipment repair, and has the greatest impact on the production of electricity and availability of the plant." Id. The electrical and instrumentation equipment has a "high potential of impact on the production of electricity and availability of the plant." Id. The flue gas desulfurization equipment is less complex than the power block area of the facility, but it represents a greater portion of the budget than does the balance of plant maintenance area in which Jones supervised. See id. at 4-5. Furthermore, the other supervisors performed more after-hours work than what Jones performed.

"By properly showing a significant difference in job responsibilities, a defendant can negate one of the crucial elements in plaintiff's prima facie case[.]" Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 F.2d 1071, 1074 (5th Cir. 1981). Cleco contends that the differences in the several supervisory areas of the plant are sufficient to negate Jones's prima facie case.

Jones makes little attempt to dispute these facts and offers no evidence to the contrary. Nor does he attempt to demonstrate that he had substantially the same responsibilities as the other supervisors in order to establish his prima facie case. Instead, he makes conclusory allegations that the pay discrepancies were racially

16

motivated and makes blanket denials which are unsubstantiated by the evidence cited. At most, he contends that he was paid less than the other supervisors, that they had the same official title, and that he had more experience.[13] These facts alone do not create a genuine dispute of material fact with respect to the issue of whether Jones had substantially the same responsibilities as the other supervisors. Accordingly, Jones has failed to establish his prima facie case of pay discrimination, and the court grants Cleco's motion for summary judgment on this ground.[14]

2. **The 2009 Disciplinary Letter.**

Jones alleges that Cleco discriminated and retaliated against him by placing a disciplinary letter in his file after he failed to report a near miss incident to his supervisor. See Record Document 5 at 39. Cleco argues that Jones cannot show a prima facie case of discrimination and retaliation and that, even if he could establish a prima facie case, he cannot show pretext.

---

[13]Jones contends that he had more experience than the other supervisors because he held the title of Field Maintenance Supervisor for a longer time period. It appears that plaintiff believes that experience is a function of time alone and does not consider other factors.

[14]Even if Jones met his burden of establishing a prima facie case, the court would still grant summary judgment because Jones did not present sufficient evidence to create a genuine dispute with respect to whether each of Cleco's legitimate, non-discriminatory reasons for the pay discrepancy are pretextual.

a.   **Race Discrimination Claim.**

To establish a prima facie case of race discrimination, a plaintiff must demonstrate that he:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007).   An essential element of a prima facie claim for discrimination is proof of an adverse employment action.   See Pegram v. Honeywell, Inc., 361 F.3d 272, 281 (5th Cir. 2004).   For purposes of discrimination claims, the Fifth Circuit employs a strict interpretation of adverse employment action:

> Under Title VII principles, which inform our treatment of section 1981 claims, an employment action that "does not affect job duties, compensation, or benefits" is not an adverse employment action. Banks v. East Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003) (quoting Hunt v. Rapides Healthcare Sys., [LLC], 277 F.3d 757, 769 (5th Cir. 2001)). Rather, an adverse employment action consists of "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." Felton v. Polles, 315 F.3d 470, 486 (5th Cir. 2002).

Id. at 282 (emphasis in original).

Jones has not provided sufficient summary judgment evidence that he suffered an adverse employment action necessary to sustain a discrimination claim.

18

Jones admits that after the disciplinary letter was placed in his file no other action was taken. Cleco did not terminate him, suspend him, or cut his pay. See Record Documents 38, Statement of Material Facts at 11 (admitted by Jones in Record Document 57). As Jones cannot prove that the disciplinary letter was an ultimate employment decision against him, he cannot establish a prima facie case of discrimination. Accordingly, Cleco's motion for summary judgment must be granted as to Jones's discrimination claim regarding the 2009 disciplinary letter.

### b.    Retaliation Claim.

A prima facie case of retaliation requires proof of three elements: (1) the plaintiff participated in a protected activity; (2) the plaintiff suffered an adverse employment action; and (3) existence of a causal link between the protected activity and the adverse employment action.[15]  See Barkley v. Singing River Elec. Power Ass'n, 2011 WL 2846542 at *5 (5th Cir., July 19, 2011) (applying standard under section 1981); McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007) (applying standard under La. R.S. 23:301).  Cleco contends that Jones cannot show that he was subjected to an adverse employment action. The standard for adverse employment action in the retaliation context is less stringent than the standard used for discrimination claims.  Instead of proof of an ultimate

---

[15]It appears that Cleco did not argue the lack of a protected activity or the lack of a causal connection.  Therefore, the court will not address these elements.

19

employment decision, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) (citations and internal quotation marks omitted). Jones's proof of an adverse employment action is the disciplinary letter placed in his file in 2009. A reasonable employee could view the disciplinary letter placed in Jones's file as a dissuasion from making or supporting charges of discrimination. The final line of the letter states, "[c]ontinued failure to meet this requirement will result in disciplinary action up to or including termination." Record Document 38, Deposition of Jones at Ex. D-38. While the letter may not be an ultimate employment determination for discrimination purposes, a reasonable employee could interpret it as a threat to dissuade further charges of discrimination. Accordingly, Jones has satisfied the adverse employment action requirement of a prima facie case of retaliation and the court concludes that Jones has established his prima facie case as to his retaliation claim..

      **c.**    **Pretext.**

Even if Jones had shown a prima facie case of discrimination, in addition to his prima facie case of retaliation, Cleco met its burden of producing a legitimate,

nondiscriminatory, nonretaliatory reason for the letter.  As discussed previously, under the McDonnell Douglas framework, if the plaintiff establishes a prima facie case of discrimination or retaliation, the burden shifts to the employer to state a legitimate, nondiscriminatory or nonretaliatory reason for the adverse employment action.  "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." McCoy, 492 F.3d at 557.  Cleco says that Jones "failed to report two serious incidents in a timely manner to Dupuy despite previously being instructed to do so." Record Document 38 at 22.

Once the employer has met its burden of production, "the plaintiff bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." Id.  "To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." Id.  Additionally, for a retaliation claim, "the plaintiff [must] prove that the protected conduct was a 'but for' cause of the adverse employment decision." Hernandez v. Yellow Transp., Inc., 641 F.3d 118, 129 (5th Cir. 2011).

Jones argues that the disciplinary letter was placed in his file because he failed to timely notify Dupuy of a near miss incident, not an accident. See Record Document 57, Response to Defendant's Statement of Facts at 19.  No one else at

21

the company, Jones claims, has received such discipline for not reporting a near miss. See Record Document 57, Deposition of Jones at 113. Jones acknowledged, however, that he could have been more timely in reporting the near miss incident to Dupuy. See Record Document 38, Deposition of Jones at Ex. D-38. His argument appears to be that what happened was not really an "incident" and he planned on reporting it the next day. See Record Document 57, Response to Defendant's Statement of Facts at 19-24. This is insufficient to show pretext.

Further, the disciplinary letter addressed two incidents—the near miss on March 19, 2009, as well as another on March 25, 2009, involving Rebekah Spring, Director of Employee Relations for Cleco. See Record Document 38, Deposition of Jones at Ex. D-38. Jones has offered no reason or evidence why the disciplinary letter for the second incident was pretextual. Cleco placed the disciplinary letter in Jones's file for two reasons. Jones has not shown why this entire action was a pretext for discrimination or retaliation. He has also not shown that his protected activity was a "but for" cause of the letter. Accordingly, his claims for discrimination and retaliation based on the 2009 disciplinary letter are dismissed.

**E.    Emotional Distress Claim.**

In its motion for summary judgment, Cleco insists Jones cannot recover on a claim for intentional infliction of emotional distress. See Record Document 38 at

22

23-24. It does not appear that Jones has alleged a claim for intentional infliction of emotional distress under Louisiana law, although he does claim **damages** for emotional pain and distress.   See Record Document 5 at 51-52, 53.   If the complaint included a claim for intentional infliction of emotional distress, the claim must be dismissed.   Jones's opposition includes no argument, much less evidence, in support of such a claim.   Therefore, to the extent Jones alleges a claim for intentional infliction of emotional distress, Cleco's motion for summary judgment is granted.

### III.  CONCLUSION

For the foregoing reasons, Cleco's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.  The motion is **GRANTED** as it applies to Jones's Title VII claims, claims for intentional infliction of emotional distress, and claims for discrimination and retaliation based on the 2009 disciplinary letter.   Jones's claims are **DISMISSED WITH PREJUDICE**, with the exception of his Title VII claims, which are **DISMISSED WITHOUT PREJUDICE**.

The motion is **DENIED** with respect to Jones's section 1981 failure to promote claims.

An order consistent with the terms of this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 21st day of September, 2011.

_____
JUDGE TOM STAGG